# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRISKIT, INC.,** | NO. C 03-05085 WWS |
| Plaintiff, | **ORDER RE MOTION TO DISMISS** |
| v. | |
| **REALNETWORKS, INC., et al.,** | |
| Defendants. | |

Defendants RealNetworks, Inc and Listen.com ("Real") have moved to dismiss this patent infringement action, contending that Plaintiff Friskit, Inc. does not own the patents in suit. Ownership of a patent is a prerequisite to standing in a patent infringement action. *See Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 34-42 (1923).

Friskit is the assignee of Aviv Eyal, the inventor of the patented technology. Eyal was employed by Microsoft Corporation from May 1998 through December 31, 1999. On January 24, 2000, Eyal and Friskit filed a provisional application covering the patents in suit. Real contends that Eyal developed the technology covered in the patents while he was still working for

-1-

Microsoft. It further contends that "Eyal's employment agreement required him to assign to Microsoft all rights in any inventions he created during the employment," and that therefore "Microsoft, not [Friskit], is the true owner of the technology covered by the patents."

The relevant provisions of the employment agreement state:

> <u>Assignment of Inventions</u>. I will make prompt and full disclosure to MICROSOFT, will hold in trust for the sole benefit of MICROSOFT, and will assign exclusively to MICROSOFT all my right, title, and interest in and to any and all inventions, discoveries, designs, developments, improvements, copyrightable material, and trade secrets (collectively herein "Inventions") that I solely or jointly may conceive, develop, author, reduce to practice or otherwise produce during my employment with MICROSOFT. I waive and quitclaim to MICROSOFT any and all claims of any nature whatsoever that I now or hereafter may have for infringement of any patent application, patent, or other intellectual property right relating to any Invention so assigned to MICROSOFT.
> My obligation to assign shall not apply to any Invention about which I can prove the following:
> a)  it was developed entirely on my own time;
> b)  no equipment, supplies, facility, services, or trade secret information of MICROSOFT were named in its development;
> c)  it does not relate (i) directly to the business of MICROSOFT or (ii) to the actual or demonstrably anticipated business, research or development of MICROSOFT; and
> d)  it does not result from any work performed by me for MICROSOFT.

The employment agreement also contained a "Best Efforts/Conflicting Interest/Moonlighting" clause, which states:

> Best Efforts/Conflicting Interest/Moonlighting. I will diligently perform my assigned duties and devote my entire working time, abilities and efforts to such duties and to furthering the best interests of MICROSOFT. During my employment, I will not engage in any activity of investment that (a) conflicts with MICROSOFT's business interests, (b) occupies my attention so as to interfere with the proper and efficient performance of my duties for MICROSOFT, or (c) interferes with the independent exercise of my judgment in MICROSOFT's best interests.[1]

---

[1] The employment agreement in addition contained moonlighting guidelines establishing requirements governing outside work by Microsoft employees. While the guidelines state that in case of failure to comply, "[u]nder the Assignment of Inventions
(continued...)

-2-

For the purposes of this motion, it is not necessary to determine whether conception of the inventions occurred while Eyal was at Microsoft, or whether the employment agreement applies to the conceived inventions. Nor is it necessary to determine whether he violated any obligations to Microsoft imposed by the employment agreement. What matters is whether he assigned his inventions to Microsoft. In the absence of an assignment, Microsoft is not the owner and Eyal therefore was free to assign his inventions to Friskit.

The plain words of the assignment clause state that Eyal "*will assign exclusively to Microsoft*" any inventions developed during his employment with Microsoft. (Emphasis added.) The agreement is not written as an assignment instrument of prospective inventions. It simply obligates Eyal to assign his inventions. It is not claimed–by Real or by Microsoft–that he ever made an assignment. This may have been a breach of the terms of the agreement, but it does not give Real standing to claim that Microsoft owns the patents when Microsoft has itself never made such a claim.

*Arachnid Inc. v. Merit Industries*, 939 F.2d 1874 (Fed. Cir. 1991), is squarely on point. There, a consulting agreement included a similar provision, which the court concluded "was an agreement to assign, not an assignment." *Id.* at 1580.

> Its provision that all rights to inventions developed during the consulting period "will be assigned" by IDEA to Arachnid does not rise to the level of a present assignment of an existing invention, effective to transfer all legal and equitable rights therein to Arachnid and extinguish any rights of IDEA. Nor does the provision amount to a present assignment of an expectant interest. *See Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1572 (1991). Although an agreement to assign in the future inventions not yet developed may vest the promisee with equitable rights in those inventions once made, such an agreement does not by itself vest legal title to patents on the inventions in the promisee:

---

[1](...continued)
section of the employment agreement, [Microsoft] will own your work," they add nothing to the terms of the agreement.

> The *legal* title to an invention can pass to another only by a conveyance which operates upon the thing invented after it has become capable of being made the subject of an application for a patent.

*Id.* at 1580-81 (quoting G. Curtis, A Treatise on the Law of Patents § 170 (4th ed. 1873)).

This case is not like *Pinpoint, Inc. v. Amazon.com, Inc.*, 347 F. Supp. 2d 579, 582 (N.D. Ill. 2004), in which the invention was developed under a sponsored research agreement which provided that inventions created pursuant to the agreement shall be the property of the University. *Pinpoint*, moreover, lends no support to a claim by a third party asserting ownership in the promisee for the benefit of the third party.

Real contends that even if the agreement did not assign the inventions to Microsoft, Microsoft still has equitable rights to the patent. Accordingly, Real argues, Friskit does not have "all substantial rights" to the patent, and cannot bring an action for infringement. *See Aspex Eyewear Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006). *Aspex Eyewear* is not applicable, as it dealt with whether the temporary transfer of various legal rights was sufficient to transfer legal ownership, or created only a license. *Id.* at 1342-43. Here, even if Microsoft had some equitable rights to the patent, Friskit holds all of the legal ownership rights, including the right to sue for infringement. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1210 (Fed. Cir. 1998) ("only the holder of legal title to a patent at the time of the infringement can bring an action for damages resulting from that infringement").

Finally, even assuming that the employment agreement did apply and that Eyal breached his obligations to Microsoft by assigning ownership to Friskit, Real cannot sue to enforce those obligations. Nothing in the agreement suggests that the parties intended it to benefit Real or similarly situated parties, or to govern ownership issues raised by a third party. Its intent was to serve the mutual

interests of the parties to the employment relationship: Microsoft's interest in the loyalty of its employees and Eyal's interest in being free from arbitrary restraint on his professional freedom. Real is, at best, only an incidental beneficiary of the employment agreement and, accordingly, lacks standing to sue for enforcement of the agreement. *See Castle v. United States*, 301 F.3d 1328, 1339 (Fed. Cir. 2002); *Coast Trading Co., Inc. v. Parmac, Inc.*, 587 P.2d 1071, 1076 (Wash. App. 1978).

Accordingly, the motion to dismiss for lack of subject matter jurisdiction is DENIED.

SO ORDERED.

DATED: July 6, 2006

_____
WILLIAM W SCHWARZER
SENIOR UNITED STATES DISTRICT JUDGE