IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRISKIT, INC., | NO. C 03-05085 WWS |
| Plaintiff, | ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| REALNETWORKS, INC., et al., | |
| Defendants. | |

In this action, Friskit, Inc. (Friskit) alleges that defendant Real Networks, Inc., (Real) infringed five of its patents. Friskit's patents involve an integrated media search and playback system. Both parties have moved for summary judgment. For the reasons stated, both motions are denied.

"Summary judgment, in patent as in other cases, is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." *Hodosh v. Block Drug Co., Inc.*, 786 F.2d 1136, 1141 (Fed. Cir. 1986). If the moving party meets their initial burden of establishing that there is no genuine issue of material fact, the burden shifts, and the nonmoving party

-1-

1  "must set forth specific facts showing that there is a genuine issue for trial." Fed.
2  R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court's
3  ultimate inquiry is whether the specific facts set forth by the nonmoving party,
4  coupled with the undisputed facts, are such that a reasonable jury might return a
5  verdict in its favor. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809
6  F.2d 626, 631 (9th Cir. 1987). The Court, consequently, draws all inferences in
7  the light most favorable to the nonmoving party and presumes that the nonmoving
8  party's evidence is true. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th
9  Cir. 1987).

## I.   REAL'S MOTION

### A.   *Automatic Playback*

Real contends that Friskit's patents only cover media playback from search results with no user intervention required after the search request. It asserts that the specifications of the patents state that the disclosed invention is a media search and playback system wherein a user obtains playback of media in response to a search request without any further manual steps after the search. Real argues that because none of the accused products (RealPlayer and Rhapsody) play back media in response to a search without additional manual steps after a search, they do not infringe.

Friskit responds that its claims cover several embodiments. Some purportedly cover automatic playback. U.S. Patent No. 6,484,199 col.40 l.6-18 (filed Mar. 22, 2002). Some purportedly embody "substantially automatic playback" in which, for example, the user selects the desired results of a search for insertion into a playlist. U.S. Patent No. 6,389,467 col.43 l.26-46 (filed May 2, 2000). The court has heretofore construed "substantially automatic" as "largely, but not wholly without human intervention." (Claim Constr. Order 7.) Thus, infringement cannot be ruled out as a matter of law based on the interpretation of the claims.

1  Nor does the prosecution history of the patents in suit support Real's
2  contention. Real cites Friskit's argument to the PTO in which it described the
3  prior art as requiring the user to manually select the links in order to get playback
4  and asserted, "These (prior art) sites do not achieve the functionality of
5  embodiments of applicant's invention. For example, according to one
6  embodiment, a user can sequentially playback audio from multiple network sites
7  without having to manually select the link to each network site."
8  This alleged disclaimer is open to the interpretation that other embodiments
9  of the invention require manual selection of links for playback. Those
10  embodiments include automatic playback as well as substantially automatic
11  playback.
12  Real also cites the Notice of Allowability which contains a shorthand
13  description of the search and playback system. It refers to playback "in a
14  sequential or automatic manner." Because the claims specifically refer to
15  "substantial automatic," this statement cannot be read as precluding all manual
16  selection. In short the prosecution history is ambiguous at best.
17  *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)
18  (stating that the Federal Circuit has "declined to apply the doctrine of prosecution
19  disclaimer where the alleged disavowal of claim scope is ambiguous"). Thus the
20  prosecution history does not necessarily preclude infringement by the accused
21  products.

22  B.   *"Substantially Automatic"*

23  Real contends that to the extent "substantially automatic" could be
24  interpreted to allow manual playback through the construction "largely, but not
25  wholly without human intervention," the phrase is indefinite under 35 U.S.C.
26  § 112 and the patents invalid under § 112 paragraph 2.
27  "By finding claims indefinite only if reasonable efforts at claim
28  construction prove futile, we accord respect to the statutory presumption of patent

validity." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2002) (holding "to increase substantially" not indefinite). Here, there is no evidence of such futility; this court was able to arrive at the construction of "substantially automatic" without encountering insuperable obstacles. Further, there is nothing about the term "substantially" that makes it inherently indefinite. *See Exxon*, 265 F.3d at 1377. The construction of "substantially" adopted in this case–"largely but not wholly"– conforms to that adopted by the Federal Circuit. *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*, 275 F.3d 1347, 1354 (Fed. Cir. 2001). The question is "whether sufficient structure was disclosed in the specifications based on the understanding of one skilled in the art." *Atmel Corp. v. Information Storage Services, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999). Real has failed to make such a showing of insufficient disclosure.

Finally, Real contends that the descriptions are deficient for lack of enablement. It argues that "substantially automatic" could include a wide range of play back systems. However, "[e]nablement does not require the inventor to foresee every means of implementing an invention at pains of losing the patent franchise." *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1071 (Fed. Cir. 2005). As the *Exxon* court observed,

> If this case were before an examiner, the examiner might well be justified in demanding that the applicant more clearly define [substantially automatic] and thereby remove any degree of ambiguity. However, we are faced with an issued patent that enjoys a presumption of validity. In these circumstances, we conclude that a person of skill in the art would understand the scope of the term . . . and that the degree of ambiguity injected into the claims by the patentee's lack of precision is therefore not fatal.

265 F.3d at 1384.

### C. Insufficiency of Infringement Contentions

Real contends that while Friskit's contentions generally state the limitations that are met in Real's product, they fail to show what aspects of Real's products met these limitations. As such, it argues, Friskit cannot meet its burden of proof

United States District Court
For the Northern District of California

1  for infringement.  The argument appears to the Court to be a non-sequitur.
2  Whether Friskit can meet its burden of proof for infringement in the end depends,
3  not on the form or content of its contentions, but on the documentary evidence and
4  witness testimony, including that of experts, adduced at trial and, specifically, a
5  comparison of the accused product to the properly construed claims.

### D. *Anticipation*

Real renews its motion for summary judgment on the ground that the RealPlayer's accused functions were found in the pre-priority date version of RealJukebox.  The Court previously denied the motion, ruling that "discussing the functionality of the product . . . fails to meet the standard required; the moving party must show that every claim, and every element of every claim has been anticipated."  (Order Den. Summ. J. 4.)  Real has supported its renewed motion with a chart (Gupta Decl. Ex. V) showing in three columns the claim language, the applicable infringement contentions with respect to RealPlayer, and evidence descriptive of RealJukebox and other asserted prior art.

Real contends that RealJukebox was an integrated system that enabled users to search for, acquire and playback music and also manage their personal music collection.  Friskit in turn argues that RealJukebox lacked a number of the claimed elements, such as a search module and a network server module and that it did not provide any of the control between the network server module and the media player.  These and other disputed issues of material fact preclude entry of summary judgment.  Similarly material facts concerning other claimed prior art are in dispute.

### E. *Obviousness*

Real contends that to the extent Friskit's claims are not invalid as anticipated, they would be invalid as obvious under 35 U.S.C. § 103(a).  A determination of obviousness is governed by the four factors enunciated in *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  A district court must make

1  and apply findings on all four *Graham* factors before invalidating a patent for
2  obviousness. *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 662-63 (Fed. Cir. 2000).
3  Real has not proposed the requisite findings and the record before the Court is too
4  fragmentary to enable it to make such findings.

The motion is denied.

## II. FRISKIT'S MOTION

Friskit has moved for summary judgment of infringement on three of the claims in three of the patents in suit. To be entitled to summary judgment on a claim, Friskit must establish that when the properly construed claim is compared with Real's accused product, all of the limitations of that claim are present and that there are no genuine issues of material fact with respect thereto. *See Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277-78 (Fed. Cir. 1995).

    A.    *Friskit's Contention That Each Element of Claim 20 of the '199 Patent is Found in Rhapsody 2.0 and 3.0*[1]

Claim 18(a) reads:

receiving a search request from a network enabled device to play back media that satisfies one or more search criteria;

Friskit maintains that Rhapsody "receives a search request from a user that satisfies one or more search criteria." Real agrees but responds that "Rhapsody does not have 'search requests . . . to playback media.'" Friskit replies that the fact that the media are not played in response to the search request has nothing to do with the elements of the claim. The significance of the "play back" language in the claim is a disputed issue of material fact.

Claim 18(b) reads:

selecting a plurality of media resources . . . ;

---

[1] In order to infringe Claim 20 of the '199 Patent, Rhapsody must also meet the limitations of independent Claim 18, directed to a method for playing back media from a network. *See Netword LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001).

Friskit maintains that users seeking a specific artist, album or track can use the Search box in the Discovery area by typing in the search criteria.. Real responds that Rhapsody does not use media resources; a search in Rhapsody returns links, not media. Media resources include files; the term has not been defined to include links. (Claim Constr. Order 7.) Whether Rhapsody infringes this claim is a disputed issue of material fact.

Claim 18(c) reads:

> Wherein a set of media resources is established based on the plurality of media resources;

Friskit maintains that the results that are returned by Rhapsody in response to the search request and that are presented to the user are an established set of media resources. Real responds that search results do not fall within the definition of a set of media resources. Moreover, artist samples are a predefined group of songs not covered by the patent. Disputed issues of material fact remain.

Claim 18(d) reads in relevant part:

> Causing one or more media resources . . . to be at least partially played back sequentially and automatically . . . ;

Friskit maintains that Rhapsody provides a mechanism to play back media resources sequentially and automatically. Real responds that Rhapsody does not cause automatic playback of media resources; the user must initiate playback. The application of the term "automatically" in this context is a disputed issue of material fact.

Claim 18(e) reads:

> Wherein causing one or more media resources in the set of media resources to be at least partially played back includes determining whether a media resource in the set of media resources is available for playback before at least partially playback that media resource.

Friskit maintains that the Rhapsody source code's GetNextTrack provides that if a track is not valid, the source code proceeds to the a second media

-7-

1  resource, i.e., the next valid one in the tracklist.  Real responds that Friskit's
2  expert has not shown that the GetNextTrack determines whether a media resource
3  is available for play before at least partially playing back the media resource.  A
4  disputed issue of material fact remains.

5    B. *Friskit's Contention That Each Element of Claim 52 of the '648 Patent is Found in RealOne and RealPlayer10*

7    Claim 51(a) reads:
8    receiving a query from a user of the terminal;
9    Claim 51(b) reads:
10   signaling a search request based on the query to one or more network sites;

12    Friskit maintains that RealOne receives the query submitted by the user and
13  then allows the user to signal a search request to a network site.  Real responds
14  that the claim requires two distinct requests and Friskit has not shown that
15  RealPlayer performs these distinct steps.  A disputed issue of material fact
16  remains.

17    Claim 51(c) reads:
18    receiving a search result from the one or more network sites, the search result including a plurality of media resource locators;

20    Friskit maintains that RealOne Player receives and displays search results.
21  Real responds that search results are received and displayed by the embedded
22  Microsoft Internet Explorer Browser, not RealPlayer; moreover, it states that
23  RealOnePlayer displays song titles which are not within the definition of media
24  resource locator.  Disputed issues of material fact remain.

25    Claim 51(d) reads:
26    signaling at least some of the plurality of media resource locators to a media player;

1    Friskit maintains that signaling to the media player occurs through the user
2    clicking. Real responds that this element is not met by the user clicking on links;
3    the specifications state that it is the search module that signals to the media player.
4    A disputed issue of material fact remains.

Claim 51(e) reads:

> arranging the at least some of the plurality of media resource locators for substantially automatic and continuous play back of media resources located by at least some the plurality of media resource locators.

Friskit maintains that RealOne allows the user to arrange a playlist from the search results and initiate playback which will play back continuously until the playlist is finished. Real responds that arranging a play list is a manual process and is not substantially automatic; moreover Friskit disclaimed this process as being substantially automatic. A disputed issue of material fact remains.

Claim 52 reads:[2]

> The method of claim 51, wherein the search results each include one or more of the plurality of media resource locators arranged in an order of priority designated by a corresponding network site in the plurality of network sites, and wherein arranging the plurality of media resource locators includes at least partially arranging the plurality of media resource locators according to the priority order designated by each of the corresponding network sites.

Friskit maintains that Real's documentation shows that search results are coded so as to return the results in a prioritized order. Real responds that Friskit has not shown that RealOne arranges the search results in an order of priority designated by a network site. A disputed issue of material fact remains.

C.   *Friskit's Contention that RealOne and RealPlayer Infringe Claim 38 of the '275 Patent*

Claim 38(a) reads:

> a user-interface to receive a user-query;

---

[2]Claim 52 depends on claim 51.

1    Friskit points to the search box on the user interface of RealPlayer. Real
2 responds that this search box is simply an instance of the Microsoft Internet
3 Explorer already on a user's computer. A disputed issue of fact remains.

4    Claim 38(b) reads:

> a search module to send a search request based on the user-query to one or more network sites, and to receive from the one or more network sites at least a first search result that references a plurality of media resources, each of the media resources having a corresponding network site;

8    Friskit maintains that RealPlayer 10 includes a search module in the form of
9 a search box and web browser that sends a search request based on the user query
10 to one or more network sites. Real responds that Friskit has not shown that its
11 search module uses a data base as required by the Court's construction, and that
12 the search queries are issued by a back end server; nor does the browser
13 communicate search results to a playback component, as required by the
14 construction. Disputed issues of material fact remain.

15    Claim 38(c) reads:

> a media player configured to access the network sites of at least some of the media resources referenced in the first search result, and to control playback of at least some of the media resources referenced in the first search result, wherein the media player controls playback of the at least some of the media resources to be substantially automatic and sequential.

20    Friskit maintains that RealPlayer controls playback through the manual
21 creation of playlists. Real responds that in the course of claim construction,
22 Friskit has represented that clicking of search results to designate a play list is not
23 substantially automatic. Disputed issues of material fact remain.

24    There being disputed issues of material fact, the motion for summary
25 judgment is denied.

## III.   FURTHER PROCEEDINGS

1.   Trial of this matter is scheduled for two weeks, commencing Monday, July 9, 2007, at 9:30 a.m.;

2. A final pretrial conference will be held on Monday, June 25, 2007, at 9:30 a.m.;

3. A status conference will be held on Wednesday March 28, 2007, at 9:30 a.m to consider the following matters:

    a. bifurcation to limit the trial to approximately six selected claims;

    b. time limits for plaintiff's and defendants' case;

    c. limits on numbers of witnesses and exhibits;

    d. dates for exchange of experts' final written direct testimony;

    e. dates for submission of proposed jury instructions; and

    f. such other items listed in Federal Rule of Civil Procedure 16(c) as may be appropriate.

IT IS SO ORDERED

DATED: March 12, 2007

_____
WILLIAM W SCHWARZER
Senior United States District Judge